**UDALL LAW FIRM, LLP**
**ATTORNEYS AT LAW**
**2198 E. CAMELBACK ROAD, SUITE 375**
**PHOENIX, AZ 85016**
**T (602) 222-4848**
**F (602) 222-4858**
tburke@udalllaw.com
minuteentries@udalllaw.com

Thomas P. Burke, II SBN 9631
Attorneys for Tyco Fire Products LP

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wesley Forbach and Evenstar A. Forbach,<br><br>Plaintiffs,<br><br>vs.<br><br>Tyco Fire Products, LP; Carrier Global Corporation, and Matlick Enterprises, Inc., d/b/a United Fire Equipment Company,<br><br>Defendants. | NO.<br><br>**NOTICE OF REMOVAL BY DEFENDANT TYCO FIRE PRODUCTS LP** |

Defendant Tyco Fire Products LP ("Tyco"), by undersigned counsel, hereby gives notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Superior Court of the State of Arizona in and for the County of Coconino ("Coconino Superior Court") to the United States District Court for the District of Arizona. As grounds for removal, Tyco alleges as follows on personal knowledge as to its own conduct and status and on information and belief as to all other matters:

### PRELIMINARY STATEMENT

1. Plaintiffs, Wesley Forbach and Evenstar Forbach, seek to hold Tyco and certain other Defendants liable based on their conduct in incorporating per- and polyfluoroalkyl sub-

UDALL LAW FIRM, LLP
2198 E. CAMELBACK ROAD, SUITE 375
PHOENIX, AZ 85016
T 602.222.4848

stances ("PFAS") into a firefighting agent known as aqueous film-forming foam ("AFFF"). Plaintiffs claim that exposure to PFAS derived from AFFF caused Mr. Forbach to develop testicular cancer.

2.      Although Plaintiffs' pleadings attribute Mr. Forbach's PFAS exposure to the AFFF he allegedly he used and was directly exposed to in the course of his firefighting work for the City of Flagstaff, Plaintiffs have submitted an expert report in which one of their experts opines that Mr. Forbach may also have been exposed to, and injured by, AFFF-derived PFAS from another source—the water that he ingested while on the job.  Some of the PFAS in such water derives from "MilSpec AFFF" manufactured by suppliers (including Tyco) in accordance with rigorous military specifications and used at military and/or civilian facilities in or near Flagstaff.  Under the federal "government contractor" defense recognized in *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988), Tyco is immune to tort liability for its design and manufacture of MilSpec AFFF—including the incorporation of PFAS into the product— and its provision of warnings for the product.  Tyco denies that PFAS from any source caused Mr. Forbach's alleged injuries, but to the extent that Plaintiffs argue otherwise, Tyco intends to raise the defense that those injuries were caused at least in part by PFAS from MilSpec AFFF—as to which Tyco has no liability as a matter of federal law.  Under the federal officer removal statute, 28 U.S.C. § 1442, Tyco is entitled to remove this action in order to have its federal defense adjudicated in a federal forum.

3.      Numerous courts, including the federal court overseeing the *In re AFFF Product Liability Litigation* MDL (the "MDL") that is pending in the District of South Carolina, have held that AFFF manufacturers have properly removed cases on the ground that

UDALL LAW FIRM, LLP
2198 E. CAMELBACK ROAD, SUITE 375
PHOENIX, AZ 85016
T 602.222.4848

the plaintiffs' claims plausibly arise at least in part from the use of MilSpec AFFF, regardless of the mechanism of alleged exposure. *See, e.g.*, *Nessel v. Chemguard*, No. 1:20-cv-1080, 2021 WL 744683, at *4 (W.D. Mich. Jan. 6, 2021); *In re Aqueous Film-Forming Foams Prods. Liab. Litig.* No. 2:18-mn-2873, 2019 WL 2807266, at *2 (D.S.C. May 24, 2019) ("*AFFF I*"); *Ayo v. 3M Comp.*, No. 18-cv-0373, 2018 WL 4781145, at *6-15 (E.D.N.Y. Sept. 30, 2018). Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## PLAINTIFFS' SECOND AMENDED COMPLAINT

4.      Plaintiffs filed this action on May 20, 2021 in Coconino Superior Court, bearing case number S-0300-CV-202100277. They filed a Second Amended Complaint ("SAC") on November 8, 2024. The SAC is the currently operative statement of Plaintiffs' claims. Defendant Matlick Enterprises, Inc., named in the SAC, has since been dismissed from the action with prejudice. Defendant Carrier Global Corporation, also named in the SAC, has never appeared in this action.

5.      Plaintiffs generally allege that Defendants (including Tyco) have designed, manufactured, marketed, and sold AFFF products containing PFAS. Plaintiffs allege that Mr. Forbach's exposure to PFAS derived from AFFF caused his testicular cancer and the damages resulting from it.

6.      The SAC asserts claims for strict products liability-design defect and failure to warn (Am. Complaint ¶¶ 51–61), negligent failure to warn (*id.* ¶¶ 62–66), negligent plan or

design of product (*id.* ¶¶ 67–70), punitive damages (*id.* ¶ 71–77), and loss of consortium (*id.* ¶¶ 78–82).  Plaintiffs seek damages for "general, consequential, special, and compensatory damages, including but not limited to pain and suffering, mental anguish, lost wages, lost future income, and loss of consortium."  (*Id.*, Prayer for Relief, p. 13).

## THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE MET.

7.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 82 and 1441(a) because the Coconino Superior Court is located within the District of Arizona.

8.     Tyco is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiffs' action as a whole under 28 U.S.C. § 1442(a)(1).  *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006).

9.     Pursuant to 28 U.S.C. § 1446(a) and Local Civil Rule 3.6(b), copies of all documents that were previously filed in state court are attached hereto as Exhibit A, along with a verification of undersigned counsel that true and correct copies of all pleadings and documents in the state court record have been filed.

10.     Pursuant to 28 U.S.C. § 1446(d), Tyco is serving a copy of this Notice of Removal upon all other parties to this case and is filing a copy with the Clerk of the Coconino Superior Court.

11.     By filing a Notice of Removal in this matter, Tyco specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

12.     Tyco reserves the right to amend or supplement this Notice of Removal.

## MILSPEC AFFF

UDALL LAW FIRM, LLP
2198 E. CAMELBACK ROAD, SUITE 375
PHOENIX, AZ 85016
T 602.222.4848

UDALL LAW FIRM, LLP
2198 E. CAMELBACK ROAD, SUITE 375
PHOENIX, AZ 85016
T 602.222.4848

13.    The United States Naval Research Laboratory developed AFFF in the 1960s to quickly suppress and extinguish liquid fuel fires, which are an ever-present risk in aviation and military environments.  Since the early 1970s, following catastrophic fires aboard the aircraft carriers USS *Forrestal* in 1967 and USS *Enterprise* in 1969,[1]  the United States military has required that MilSpec AFFF be used on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to put out fires, save lives, protect property, and train its personnel.  Pursuant to requirements of the Federal Aviation Administration, MilSpec AFFF is also used to fight fires and train firefighters at larger civilian airports.  The Naval Research Laboratory has described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[2]

14.    Tyco and other manufacturers of MilSpec AFFF have designed, manufactured, and supplied the product under contracts with the U.S. government.  The design and manufacture of MilSpec AFFF are governed by rigorous military specifications created and administered by Naval Sea Systems Command, a unit of the Department of Defense ("DoD").  Those specifications are not "regulations" but, rather, directives of the federal government acting in its proprietary capacity.  The applicable specification, Mil-F-24385, was first

---

[1]  *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

[2]  U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

UDALL LAW FIRM, LLP
2198 E. CAMELBACK ROAD, SUITE 375
PHOENIX, AZ 85016
T 602.222.4848

promulgated in 1969, and has been revised a number of times since then.[3]  All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to procurement by the military or civilian airports.  Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[4]  The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements.  After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[5]  Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.  All MilSpec AFFF is military equipment and must comply with MilSpec requirements as to design, manufacture, and labeling, regardless of whether the product is ultimately used in a military or civilian setting.

15.    Tyco manufactured MilSpec AFFF from the 1970s until 2023.  In manufacturing MilSpec AFFF, Tyco acted under the close direction of federal officers, who micromanaged Tyco's activities.  At various times, government inspectors maintained an office at

---

[3]  The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[4]  Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[5]  *Id.*

UDALL LAW FIRM, LLP
2198 E. CAMELBACK ROAD, SUITE 375
PHOENIX, AZ 85016
T 602.222.4848

Tyco's AFFF manufacturing facility in Marinette, Wisconsin. Each batch of MilSpec AFFF was inspected by a government inspector, and the government performed (either itself or through third-party contractors) detailed tests on the AFFF to determine compliance with MilSpec requirements. Those tests covered physical and chemical parameters as well as fire-extinguishment capabilities. The government could, and did, reject AFFF based on the results of such those tests. The inspectors performed a detailed inspection of MilSpec AFFF products before they left Tyco's facility, including checking caps on product pails for leakage and release torque, the legibility of silk screen printing on the exterior of the drums or pails, the presence of proper lot numbers and production dates, metal strapping galvanization, and moisture content of pallets.

16.     From its inception until 2019, the MilSpec for AFFF included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants." All fluorocarbon surfactants are PFAS—according to Plaintiffs, the very compounds whose presence in AFFF constitutes a defect in the product. In 2019 the MilSpec removed the express requirement of "fluorocarbon" surfactants, but the DoD has acknowledged that no AFFF product can satisfy the stringent performance requirements of the MilSpec without the use of PFAS-containing surfactants. In recent years, the government's testing of MilSpec AFFF has included testing for certain types of PFAS, specifically, perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS").

17.     According to an expert report submitted by Plaintiffs' expert Jamie DeWitt, Ph.D. in 2024, firefighters, including Mr. Forbach, can be exposed to AFFF-derived PFAS "through ingestion of drinking water supplied to the firehouse that may have been

-7-

UDALL LAW FIRM, LLP
2198 E. CAMELBACK ROAD, SUITE 375
PHOENIX, AZ 85016
T 602.222.4848

contaminated by AFFF." Dr. DeWitt's opinion is not limited to PFAS derived from non-MilSpec AFFF.

18. Mr. Forbach worked as a firefighter for the Flagstaff Fire Department for eleven years before his cancer diagnosis. In that time, he worked and spent substantial time in firehouses throughout Flagstaff. In the course of his work as a firefighter, Mr. Forbach consumed PFAS-containing water from the public water supply at firehouses in Flagstaff. The PFAS that Mr. Forbach was exposed to in the public water supply derived in part from use of MilSpec AFFF (including MilSpec AFFF manufactured by Tyco) at military and/or civilian facilities in or near Flagstaff.

19. To be clear, Tyco denies that PFAS from any source caused Mr. Forbach's alleged injuries. But to the extent that Plaintiffs present evidence to the contrary, Tyco intends to defend itself on the ground that Mr. Forbach's injuries have been caused in whole or in part by his exposure to a source of AFFF-derived PFAS for which Tyco has no legal liability—water that contains PFAS originating in MilSpec AFFF.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1).

20. Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant alleges that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority; (c) the plaintiff's claims are "for or relating to" those actions; and (d) the removing defendant asserts a "colorable" federal defense. *Durham*, 445 F.3d at 1251; 28

U.S.C. § 1442(a)(1); *see also, e.g.*, *Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989); *Goncalves ex rel. Goncalves v. Rady Children's Hosp. S.D.*, 865 F.3d 1237, 1244 (9th Cir. 2017); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017).

21.    Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441.  Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).  This is because § 1442(a)(1) "protect[s] federal officers" and "guarantee[s] its agents access to a federal forum if they are sued or prosecuted." *Durham*, 445 F.3d at 1253.  This important federal policy "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). To the contrary, the statute must be "liberally construed" in favor of removal.  *Durham*, 445 F.3d at 1252 (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)).

22.    All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiff's injuries have been caused at least in part by AFFF derived from MilSpec AFFF.  *See, e.g.*, *Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against Tyco and other manufacturers of MilSpec AFFF); *Ayo*, 2018 WL 4781145 (same).  The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found on multiple occasions that removal under § 1442(a)(1) is proper where the notice of removal alleges that the plaintiff's injuries have been caused, at least in part, by PFAS derived from MilSpec

UDALL LAW FIRM, LLP
2198 E. CAMELBACK ROAD, SUITE 375
PHOENIX, AZ 85016
T 602.222.4848

AFFF. *See In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266, at \*2–3 (D.S.C. May 24, 2019) ("MDL Order 1"); Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6. Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[6]

### A.    The "Person" Requirement Is Satisfied.

23.    The first requirement for removal under the federal officer removal statute is satisfied here because Tyco, a limited partnership, meets the definition of a "person" under the statute. Under § 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships." *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010); *Isaacson*, 517 F.3d at 135–36.

### B.    The "Acting Under" Requirement Is Satisfied.

24.    The second requirement is that the defendant has acted under a federal officer. *Durham*, 445 F.3d at 1251; 28 U.S.C. § 1442(a)(1).

25.    A defendant is "acting under" a federal officer when it assists or helps carry out the duties or tasks of a federal officer. *Goncalves*, 865 F.3d at 1245. The words "acting under" are to be interpreted broadly. *Id.* Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct

---

[6] Following removal, Tyco intends to designate this action for transfer to the MDL.

UDALL LAW FIRM, LLP
2198 E. CAMELBACK ROAD, SUITE 375
PHOENIX, AZ 85016
T 602.222.4848

UDALL LAW FIRM, LLP
2198 E. CAMELBACK ROAD, SUITE 375
PHOENIX, AZ 85016
T 602.222.4848

was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813. Rather, courts have routinely treated the "acting under" requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it manufactured pursuant to federal government specifications. *Sawyer*, 860 F.3d at 255.

26.    In designing, manufacturing, and supplying the PFAS-containing MilSpec AFFF products at issue, Tyco acted under the direction and control of one or more federal officers. Specifically, Tyco acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.[7]  Until 2019, those specifications expressly required the use of PFAS ("fluorocarbon surfactants") in MilSpec AFFF.  Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DOD.[8]

27.    As noted above, in manufacturing MilSpec AFFF for the DoD, Tyco acted under the close direction of federal officers, with government inspectors actually occupying office space at Tyco's AFFF manufacturing facility.

28.    Tyco's manufacture of MilSpec AFFF helped the DoD to fulfill basic government tasks, namely, the production of mission-critical military equipment.  Tyco was "acting under" a federal officer here because the effect of Plaintiffs' claims, at least in part, is

---

[7]  *See* Mil-F-24385 (1969) and subsequent revisions and amendments, cited in note 5, *supra*.

[8]  *See* Dep't of Defense SD-6, *supra* note 7, at 1.

to challenge Tyco's alleged conduct in providing MilSpec AFFF, a vital product "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[9] Accordingly, the government has long depended upon outside contractors like Tyco to develop and supply MilSpec AFFF. *See Nessel*, 2021 WL 744683, at *3 (holding that AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8-9 (holding that Defendants were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *In re AFFF*, 2019 WL 2807266, at *2 (finding "acting under" requirement was satisfied because AFFF manufacturer defendant "has demonstrated that it was manufacturing the product under the U.S. military's guidance"). If Tyco and other manufacturers did not manufacture and supply MilSpec AFFF, the government would have to manufacture and supply the product itself. In *Ayo*, the court held that ***all*** of the "Manufacturing Defendants" in that case (including Tyco)—not just 3M, the first manufacturer of the product—"assisted and help[ed] carry out[ ] the duties or tasks of officers at the DoD and had the special relationship with the Government." 2018 WL

---

[9] *Fulfilling the Roosevelts' Vision* at 37.

UDALL LAW FIRM, LLP
2198 E. CAMELBACK ROAD, SUITE 375
PHOENIX, AZ 85016
T 602.222.4848

4781145 at *9 (internal quotation marks and citations omitted; brackets as supplied by *Ayo* court).

29.    Over a period of decades, DoD officers, as part of their federal duties, exercised their discretion to require that MilSpec AFFF contain fluorocarbon surfactants (*i.e.*, PFAS) due to those chemicals' unique ability to cause the rapid extinguishment of liquid fuel fires. Tyco's provision of PFAS-containing MilSpec AFFF is so closely related to those officers' implementation of their duties that it would prejudice Tyco to be subjected to state-court litigation by plaintiffs who seek to impose liability on Tyco for including in MilSpec AFFF the very ingredients that the DoD required. A state-court jury should not be permitted to engage in "second-guessing" of federal contractors' compliance with federal officers' discretionary judgments about product design and composition. *See Boyle*, 487 U.S. at 511.

## C.    The "Under Color Of Federal Office" Requirement Is Satisfied.

30.    As with the "acting under" requirement, the hurdle erected by the requirement that plaintiff's claims be "for or relating to a defendant's actions under color of federal office" (sometimes termed the "nexus" requirement) "is quite low." *Goncalves*, 865 F.3d at 1245 (quoting *Isaacson*, 517 F.3d at 137).[10] It is sufficient for a defendant to establish a connection or association between the lawsuit and the federal office. *See Sawyer*, 860 F.3d at 258; *Papp*, 842 F.3d at 813.

---

[10]  The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990, 2011 WL 5109532, at *5 (S.D.N.Y. Oct. 21, 2011).

UDALL LAW FIRM, LLP
2198 E. CAMELBACK ROAD, SUITE 375
PHOENIX, AZ 85016
T 602.222.4848

31.    Here, Plaintiffs allege that the presence of PFAS in AFFF is the source of their injuries.  Through the report of Dr. DeWitt, Plaintiffs now contend that AFFF-contaminated drinking water may be a source of PFAS that caused those injuries, and that contention covers PFAS derived from MilSpec AFFF.  Tyco alleges that some of the AFFF giving rise to Plaintiffs' claimed injuries was MilSpec AFFF that it designed, manufactured, or supplied; and that the use of PFAS in MilSpec AFFF was required by military specifications.  As a result, Plaintiffs' claims against Tyco are connected to its acts taken under color of federal office.  *See Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of [PFAS] in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1,  2019 WL 2807266, at *3 (element satisfied where "[Plaintiff]'s claims arise out of use of AFFF products that it claims Tyco manufactured and sold, and for which the U.S. military imposes MilSpec standards."); MDL Order 2, at 5 (element satisfied where civilian airports used and released AFFF products, "for which the military imposes MilSpec standards," were the alleged cause of plaintiff's injuries); MDL Order 3, at 5–6 (same).  Courts "credit Defendants' theory of the case when determining whether [the] causal connection exists."  *Isaacson*, 517 F.3d at 137; *see also Nessel*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present").

### D.    The "Colorable Federal Defense" Requirement Is Satisfied.

32.    The requirement of a "colorable federal defense" is satisfied by Tyco's assertion of the government contractor defense.  The Ninth Circuit recognizes that this defense supports removal under § 1442(a)(1).  *See Leite v. Crane Co.*, 749 F.3d 1117, 1124 (9th Cir. 2014).

UDALL LAW FIRM, LLP
2198 E. CAMELBACK ROAD, SUITE 375
PHOENIX, AZ 85016
T 602.222.4848

-14-

UDALL LAW FIRM, LLP
2198 E. CAMELBACK ROAD, SUITE 375
PHOENIX, AZ 85016
T 602.222.4848

33.     At the removal stage, a defendant need only show that its government contractor defense is "colorable." *Id.* (quoting *Jefferson Cty.*, 527 U.S. at 407); *see also, e.g.*, *Sawyer*, 860 F.3d at 254.   "To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." *Isaacson*, 517 F.3d at 139 (citation omitted).  At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014) (quoting *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 n. 12 (2006)).[11]   Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants."  *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783-84 (E.D. Pa. 2010).   "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (citation omitted).

34.     Under the government contractor defense, the defendant is not liable for alleged defects or negligence with respect to military equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of

---

[11] *See also Kraus v. Alcatel-Lucent*, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense.").

the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512. Tyco has satisfied these elements for purposes of removal.

35. The requirement of "reasonably precise specifications" can be met by evidence showing either (a) that the government's participation in the design of the product "amount[ed] to more than a rubber stamping," or (b) that the government continued to purchase or use a product after the government became aware that the product contained the alleged defect. *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir. 1989). Naval Sea Systems Command participated in the design of MilSpec AFFF, and its role was not a mere "rubber stamping." It created (and has updated) detailed specifications governing the product's formulation, performance, testing, storage, inspection, packaging, and labeling. Those specifications are "reasonably precise" in requiring the use of PFAS. As noted earlier, until 2019 the specification expressly required that MilSpec AFFF contain "fluorocarbon surfactants," all of which are members of the PFAS family. Even since that express requirement was removed from the specification, the use of PFAS has been implicitly mandated because PFAS-containing surfactants are the only kind that allow AFFF to meet the performance requirements of the specification. In addition, in the past and continuing to the present, the DoD has purchased and used MilSpec AFFF with awareness of the product's PFAS content and of the alleged risks associated with PFAS in the product. *Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

UDALL LAW FIRM, LLP
2198 E. CAMELBACK ROAD, SUITE 375
PHOENIX, AZ 85016
T 602.222.4848

36.     With respect to the second requirement, Tyco's products have appeared on the DoD Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See id.* at *13 ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, 2019 WL 2807266, at *3 (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

37.     Regarding the third requirement, in the time period relevant to this case the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, even without any warnings from Tyco, such that the government was able to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The MilSpec for AFFF has long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. The United States has understood that AFFF contains PFAS; and that certain PFAS have been reported to raise environmental or human health issues.[12] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from firefighting exercises are considered to have adverse effects

---

[12]  *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002).

UDALL LAW FIRM, LLP
2198 E. CAMELBACK ROAD, SUITE 375
PHOENIX, AZ 85016
T 602.222.4848

environmentally."[13]   By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."  In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer.  More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA.  Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[14]   Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[15]   If the government is already aware of the relevant product hazards, no warning by the manufacturer to the government is required.  *See Ayo*, 2018 WL 4781145, at *14

---

[13]  *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[14]  Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[15]  *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

UDALL LAW FIRM, LLP
2198 E. CAMELBACK ROAD, SUITE 375
PHOENIX, AZ 85016
T 602.222.4848

38.     At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks.  *See Twinam v. Dow Chem. Co. (In re "Agent Orange" Prod. Liab. Litig.)*, 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)).   Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies.  *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

39.     Tyco's use of PFAS in MilSpec AFFF was required by military specifications. By seeking to impose tort liability on Tyco for alleged injuries to Plaintiffs that were caused in whole or in part by Tyco's compliance with military specifications, Plaintiffs are attempting to use state tort law to attack design choices dictated by the military.   The government contractor defense precludes such an attack.  *See Boyle*, 487 U.S. at 509.

40.     In the MDL, the court has found based on an extensive factual record that the government contractor defense asserted by Tyco and other MilSpec AFFF manufacturers presents genuine issues of fact for trial.  *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *12, 15 (D.S.C. Sept. 16, 2022).  A defense that presents triable issues is by definition better than merely "colorable."

UDALL LAW FIRM, LLP
2198 E. CAMELBACK ROAD, SUITE 375
PHOENIX, AZ 85016
T 602.222.4848

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    WHEREFORE, Tyco hereby removes this action from the Coconino Superior Court

2  to this Court.

3    DATED this 13th day of December, 2024.

4                        UDALL LAW FIRM, LLP

5

6

7    By /s/ Thomas P. Burke, II
        Thomas P. Burke, II

8        Attorneys for Tyco Fire Products LP

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UDALL LAW FIRM, LLP
2198 E. CAMELBACK ROAD, SUITE 375
PHOENIX, AZ 85016
T 602.222.4848

-20-

**<u>CERTIFICATE OF SERVICE</u>**

I, Jessica Montes, hereby certify that on December 13, 2024, I caused a true and correct copy of the foregoing document to be filed via the Court's Electronic Case Filing (ECF) system, which will send a notification to all counsel of record, and copies will also be sent to counsel on this date via email as follows:

Lincoln Combs (025080)
O'STEEN & HARRISON, PLC
300 W. Clarendon Avenue, Suite 400
Phoenix, Arizona 85013-3424
lcombs@vanosteen.com
*Counsel for Plaintiffs*

Kerry Miller
Jason W. Burge
Danielle Teutonico
FISHMAN HAYGOOD LLP
201 St. Charles Ave., Floor 46
New Orleans, Louisiana 70170
kmiller@fishmanhaygood.com
jburge@fishmanhaygood.com
dteutonico@fishmanhaygood.com
*Counsel for Plaintiffs*

Paul J. Napoli
NAPOLI SHKOLNIK NSPR LAW SERVICES, LLC
1302 Avenida Ponce de Leon
Santurce, Puerto Rico 00907
pnapoli@nsprlaw.com
*Counsel for Plaintiffs*

*/s/ Jessica Montes*

UDALL LAW FIRM, LLP
2198 E. CAMELBACK ROAD, SUITE 375
PHOENIX, AZ 85016
T 602.222.4848